UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN LEE McCULLOM,

    Plaintiff,

  v.

SEAN WHENT, et. al.,

    Defendants.

Case No. 15-cv-5718-TEH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dkt. No. 38

    Plaintiff Kevin Lee McCullom, a detainee, filed this pro se action under 42 U.S.C. § 1983. This case proceeds under the amended complaint (Docket No. 15) against Defendant Whittaker with allegations that while working at Santa Rita Jail she confiscated Plaintiff's legal mail in one case and prevented mail from being delivered in another case.[1] Defendant filed a motion for summary judgment. Plaintiff has been provided four months to file an opposition but has failed to oppose the motion.[2] Regardless, the Court has still reviewed the motion for summary judgment on the merits and for the reasons that follow,

---

[1] Service was ordered on another Defendant, T.S. Jacobs. Defendant Whittaker's attorney filed a notice that T.S. Jacobs does not exist nor was employed at Santa Rita Jail. Docket No. 44. Plaintiff was ordered to provide more information so this Defendant could be served, but Plaintiff has failed to provide any additional information.

[2] Despite not filing an opposition in this case, Plaintiff has continued to file motions in another case in this Court from December 2016 to February 2017. See Docket Nos. 21-27 in McCullom v. Ahern, Case No. 16-cv-0045 HRL.

**Defendant's motion is GRANTED.**

**I**

During the relevant time, Plaintiff was incarcerated at Santa Rita Jail.[3]  Am. Compl. at 1-3.  Defendant Whittaker has been the mailroom supervisor at Santa Rita Jail since 2013.  Motion for Summary Judgment ("MSJ"), Whittaker Decl. ¶ 1.  Defendant oversees four administrative units at the jail that comprise 22 staff members.  Id. ¶¶ 2-4.  Defendant's responsibilities include accounting for the mailroom staff, delegating work assignments, resolving problems and addressing grievances and appeals arising from mailroom operations.  Id. ¶¶ 2-5.  The mailroom at Santa Rita Jail processes over 200,000 pieces of incoming and outgoing inmate mail a year.  Id.  Defendant does not personally open, inspect, read, or retain inmates' outgoing or incoming mail.  Id. ¶¶ 3, 20, 24.

Sorting inmate mail is a multi-step process.  Id. ¶ 7.  Incoming mail is picked up from the United States Post Office by mailroom staff and brought to the jail for processing.  Id. ¶ 7(a).  After the mail is brought to the mailroom, staff looks up each inmate addressee's housing location and writes the information on each envelope.  Id. ¶ 7(a)-(b).  Visible outer "contraband" includes items such as lipstick marks, stickers, glitter, etc., which have been deemed hazardous per Santa Rita Jail policy are returned to the sender, and staff indicates why delivery was prevented  Id. ¶ 7(c).

---

[3] The following facts, unless otherwise noted, are undisputed.  Even though Plaintiff has not filed an opposition the Court has reviewed his amended complaint.

Legal mail includes mail specifically marked as "legal" or otherwise determined to be from an attorney or court; legal mail is bundled without opening and marked with a "Legal Mail" stamp which instructs opening "in the presence of inmate by the deputy making the delivery" and requires inmate signature to confirm delivery. Id. ¶ 7(f). Nonlegal mail is automatically opened, inspected for contraband (such as drugs, weapons and obscene materials) and then re-bundled and sorted by housing unit for inmate delivery. Id. ¶¶ 7(f)-(h).

When incoming mail is dropped off at the separate housing units, mailroom staff picks up outgoing mail, which is brought to the mailroom for processing. Id. ¶¶ 9-11. Outgoing nonlegal mail is not opened or inspected unless deemed necessary due to jail security. Id. ¶ 9. With respect to outgoing legal mail, a deputy must confirm it is legal mail when picked up from the inmate by signing his or her name and badge number on the back of the envelope. Id. ¶ 10. Outgoing mail is then taken to the United States Post Office. Id. ¶ 11.

Plaintiff states that on October 22, 2015, his letter to the California Supreme Court accusing an attorney of corruption was confiscated. Am. Compl. at 1, 3. On November 6, 2015, a nonlegal envelope addressed to Plaintiff from the United States Postal Service arrived at the jail. MSJ, Kennedy Decl, ¶ 10; Ex. 4 at 3. The content of the nonlegal envelope was a large manila envelope from Plaintiff and addressed to the California Supreme Court. Ex. 4 at 3. This was the envelope Plaintiff attempted to send, though it appears the contents was lost. This inner envelope was marked as legal mail. Id. Also included in the

3

nonlegal envelope from the United States Postal Service was a letter from the postal service that stated that an empty wrapper was found at the postal service sorting facility but the accompanying mail was not found.  Id. at 3-8.  Plaintiff claims jail mailroom staff forged this letter from the postal service.  Am. Compl. at 2.

On a separate occasion, Plaintiff states that a letter this Court sent to Plaintiff was returned to the Court as undeliverable in the case McCullom v. Bang, Case No. 15-cv-3363-TEH.  Am. Compl. at 3.  In Case No. 15-cv-3363-TEH, a Court order was returned to the Court as undeliverable on September 16, 2015.  Docket No. 14 in Case No. 15-cv-3363-TEH.  No other mail in that case was returned to the Court as undeliverable.  The mail returned to the Court has the United States Postal Service yellow return-to-sender sticker covering the addressee portion of the envelope so it is not clear what the address stated and if it was correct.  Id.  Santa Rita Jail does not use the yellow sticker that was on the envelope.  Whittaker Decl. ¶ 16.  Plaintiff later filed three more actions in this Court against the same defendants he had named in Case No. 15-cv-3363-TEH: McCullom v. O'Malley, Case No. 16-cv-00899 (N.D. Cal. February 23, 2016); McCullom v. Parker, Case No. 16-cv-01054 (N.D. Cal. March 2, 2016); McCullom v. Whent, Case No. 16-cv-01249 (N.D. Cal. March 14, 2016).

Defendant in her role as supervisor did not personally handle any of Plaintiff's mail.  Whittaker Decl. ¶¶ 12, 14, 16, 20-24.

II

A

Summary judgment is properly granted when no genuine disputes of material fact remain and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).  The moving party bears the burden of showing there is no material factual dispute.  Celotex, 477 U.S. at 331.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Id. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  If the moving party meets its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994 (1991); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105 (9th Cir. 2000).

Material facts that would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Questions of fact regarding immaterial issues cannot defeat a motion for summary judgment. Reynolds v. County of San Diego, 84 F.3d 1162, 1168-70 (9th Cir. 1996), rev'd on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

B

Prisoners enjoy a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from nonprisoners. See Thornburgh, 490 U.S. at 413.

Prison officials may institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, see Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys), and mail sent from prisoners to the courts, see Royse v. Superior Court, 779 F.2d 573, 574-75 (9th Cir. 1986)

(outgoing mail to court).  But the opening and inspecting of "legal mail" outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government.  See O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (citing Laird v. Tatum, 408 U.S. 1, 11 (1972)); but cf. Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (prison officials may open and inspect mail to prisoner from courts outside prisoner's presence because mail from courts, as opposed to mail from a prisoner's lawyer, is not "legal mail").  If so, prison officials must establish that legitimate penological interests justify the policy or practice.  See O'Keefe, 82 F.3d at 327 (mail policy that allows prison mailroom employees to open and read grievances sent by prisoners to state agencies outside prisoners' presence reasonable means to further legitimate penological interests).

Prisoners have a constitutional right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977).  To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury.  See Lewis, 518 U.S. at 350-55.  To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement.  See id. at 354-55.

III

A

Plaintiff argues, with no support, that Defendant was responsible for the letter to the California Supreme Court being lost and for the order from the Court being returned to the Court. Even viewing the evidence in a light most favorable to Plaintiff, Defendant has met her burden in demonstrating that there is no material factual dispute and she is entitled to prevail as a matter of law. While Plaintiff did not file an opposition, the Court still looked to Plaintiff's amended complaint, but Plaintiff has failed to present any evidence that a material dispute exists.

It is undisputed that Defendant is the supervisor of the jail mailroom and does not personally process the mail. It is also undisputed that the mailroom processes approximately 200,000 pieces of mail each year. Plaintiff has presented no evidence that any jail mail worker, let alone Defendant, was responsible for the first piece of mail being lost or the second piece of mail being returned to the Court.

Plaintiff stated in his amended complaint that Defendant forged the letter and forms from the United States Postal Service informing him of the lost mail and was also responsible for the order from this Court being returned to the Court. Defendant has met her burden in showing that she did not fabricate the United States Postal Service letter or forms and that the loss of his mail by the post office had nothing to do with jail mailroom staff. She has also shown that she was not responsible for the Court order being returned to the Court. It does not appear that

8

the Court order ever reached the jail because it was returned with a sticker used by the post office, not the jail. Plaintiff has failed to present any evidence or arguments to refute Defendant's evidence.

Conclusory statements, such as that an opponent is lying or that documents have been fabricated without presentation of any explanation of what portion of a statement or document is false and without offering an explanation of one's view of the true state of events are insufficient to raise a triable issue. "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

Even if the post office letter was forged and the Court's order was improperly returned, Plaintiff cannot demonstrate that Defendant was responsible for either act. The jail's mailroom processes more than 200,000 letters each year and there are many employees who process the mail. Moreover, Plaintiff cannot show that he was denied access to the courts by either act because he has not demonstrated that he was pursuing a nonfrivolous claim and that he suffered an actual injury. When Plaintiff received notice that the letter to the California Supreme Court was lost, he could have resent a new letter to that court. When Plaintiff's federal action, Case No. 15-cv-3363-TEH, was dismissed without prejudice after the Court's order was returned, Plaintiff could have moved to reopen the case. It is undisputed that after these incidents with his mail, Plaintiff has continued to litigate additional civil actions without problems.

1  Nor has Plaintiff shown that jail procedures violated his
2  First Amendment rights to send and receive mail or that there
3  were any violations of his legal rights due the Court order being
4  lost and returned. A review of Plaintiff's other federal actions
5  demonstrates that he has been able to send and receive many legal
6  letters and that he opened new federal cases after these two
7  isolated incidents.
8  Moreover, the Ninth Circuit has held that an isolated
9  instance or occasional opening of legal mail outside the inmate's
10 presence does not rise to the level of a constitutional
11 violation. See Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th
12 Cir. 1989); Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003)
13 (isolated incident of mail tampering usually insufficient to
14 state claim); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir.
15 1997) (isolated incident of opening legal mail without evidence
16 of improper motive or resulting interference with access to
17 courts or right to counsel does not support a claim). For all
18 these reasons, Defendant is entitled to summary judgment.[4]

19  B

20 "A District Court may properly on its own motion dismiss an
21 action as to defendants who have not moved to dismiss where such
22 defendants are in a position similar to that of moving defendants
23 or where claims against such defendants are integrally related."
24 Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir.
25 1981). "Such a dismissal may be made without notice where the
26 [plaintiff] cannot possibly win relief." Omar v. Sea-Land Serv.,

---

[4] Because the Court has not found a constitutional violation, the Court will not address the qualified immunity argument.

10

Inc., 813 F.2d 986, 991 (9th Cir. 1987). The court's authority in this regard includes sua sponte dismissal as to defendants who have not been served and defendants who have not yet answered or appeared. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared."); Ricotta v. California, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998).

Plaintiff only states that Jacobs was involved with the letter that was sent to the California Supreme Court being lost and with the order being returned to this Court. These allegations are similar to the conclusory allegations against Whittaker which were discussed at length above and Jacobs is similarly situated. Jacobs is therefore dismissed from this action for the reasons set forth above.

IV

For the foregoing reasons, the Court hereby orders as follows:

1. Defendant's motion for summary judgment (Docket No. 38) is GRANTED.

2. The Clerk shall close the file. This order terminates Docket No. 38.

IT IS SO ORDERED.

Dated: 2/14/2017

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\CR.15\McCullom5718.sj.docx